UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MILRY MONDESTIN,                 )
                                 )
            Petitioner           )
                                 )        Civil Action No.
      v.                         )        04cv12602-MEL
                                 )
JOSEPH MCDONOUGH, ET AL.         )
                                 )
            Respondent[1]        )

RETURN, MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISMISS, AND OPPOSITION TO STAY REQUEST

     Respondent moves for dismissal of this action because
under First Circuit law petitioner has procedurally defaulted
any claim for judicial review of his removal order by failing
to avail himself of the statutorily prescribed direct review at
the Circuit Court.  Rivera-Martinez v. Ashcroft, 389 F.3d 207
(1st Cir. 2004).  Because his claims are defaulted, the Court
should also deny the stay request.

FACTS AND BACKGROUND

     Petitioner is a native and citizen of Haiti who entered
the United States without inspection on October 1, 1996,
through Miami, Florida.  Petitioner applied for asylum before
the former Immigration and Naturalization Service ("INS"), but

_____

[1] The responsive official of the Department of Homeland
Security responsible for enforcement of petitioner's removal
order in the instant action is Bruce Chadbourne, Field Office
Director for Detention and Removal, Department of Homeland
Security, Bureau of Immigration and Customs Enforcement ("ICE")
in Boston, Massachusetts. See 28 U.S.C. § 517 (providing for
the appearance of the Department of Justice "to attend to the
interests of the United States in a suit pending in a court of
the United States").

his case was referred to an Immigration Judge upon issuance of an administrative Notice to Appear dated June 28, 1997, charging petitioner with removability as an inadmissible alien under Immigration and Nationality Act ("INA") section 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i) (alien present in the United States without being admitted or paroled).

In removal proceedings before an Immigration Judge at Miami, Florida, petitioner's applications for asylum and withholding of deportation were heard and denied, and petitioner was ordered deported to Haiti by decision of the Immigration Judge dated October 14, 1997. See Attachment A, Oral Decision of the Immigration Judge.

Petitioner appealed that removal order to the Board of Immigration Appeals ("BIA"), which affirmed the order of the Immigration Judge by decision dated July 22, 2002. See Attachment B.

Petitioner failed to seek direct judicial review of the July 22, 2002, BIA order at the Eleventh Circuit Court of Appeals as prescribed by statute. See 8 U.S.C. §§ 1252(b)(1) (directing that "[t]he petition for review must be filed not later than 30 days after the date of the final order of removal"), and 1252(b)(2) (prescribing venue in review of a removal order, "[t]he petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings.").

Petitioner was apprehended and taken into custody on November 22, 2004, by the Bureau of Immigration and Customs Enforcement ("ICE"). Petitioner remains in ICE custody pending completion of arrangements for his removal to Haiti.

**ARGUMENT**

I.   PETITIONER'S CLAIMS ARE PROCEDURALLY DEFAULTED BY HIS FAILURE TO SEEK DIRECT REVIEW OF THE BIA'S JULY 22, 2002 REMOVAL ORDER.

In Rivera-Martinez v. Ashcroft, 389 F.3d 207 (1st Cir. 2004), the First Circuit affirmed on procedural default grounds a district court's dismissal of a habeas petition seeking to challenge a removal order. Like the instant petitioner, the alien habeas petitioner in Rivera-Martinez was not statutorily barred from seeking the prescribed direct view of his final order of removal at the circuit court of appeals, but nonetheless abandoned that avenue and instead attempted to seek review of his removal order in habeas corpus proceedings before the district court.

The district court below in Rivera-Martinez dismissed the petition on the basis that petitioner was required to have availed himself of the statutorily prescribed direct review at the circuit court by filing a petition for review there within 30 days of the date of entry of his final order of removal. See 8 U.S.C. §§ 1252(b)(1) (directing that "[t]he petition for review must be filed not later than 30 days after the date of the final order of removal"), and 1252(b)(2) (prescribing venue

3

in review of a removal order, "[t]he petition for review shall
be filed with the court of appeals for the judicial circuit in
which the immigration judge completed the proceedings.").

The district court reasoned that "because there exists a
specific statutory review process for such claims, there is no
basis to invoke habeas corpus jurisdiction to provide a
duplicative review process or vary that which Congress has
provided", and that the petitioner "may not escape the
limitations period Congress has established for the route to
judicial review by seeking to develop in a leisurely manner an
alternative path that Congress has not authorized." Rivera-
Martinez v. Ashcroft, 389 F.3d at 208-9, quoting district
court's Memorandum and Order dated April 30, 2003, Rivera-
Martinez v. Ashcroft, No. 03cv10268-DPW (D. Mass. 2003).

The First Circuit in Rivera-Martinez affirmed the district
court habeas dismissal, holding that an alien who "could have,
but did not press [his claim] on statutory direct review" at
the Circuit Court of Appeals, had "procedurally defaulted" on
his claim so as to make habeas corpus review of that same claim
unavailable.  Rivera-Martinez v. Ashcroft, 389 F.3d at 209.

The circuit court's Rivera-Martinez decision declared that
because the petitioner had filed a petition for writ of habeas
corpus instead of filing a petition for statutorily prescribed
direct review at the circuit court, "this is a straightforward
case of a petitioner attempting to use habeas to resurrect a

claim that could have been and should have been presented on direct review." Id. at 210.

The First Circuit noted that it had "previously recognized that principles of procedural default apply in the immigration law context", citing Foroglou v. Reno, 241 F.3d 111, 115 (1st Cir. 2001), and Mattis v. Reno, et al., 212 F.3d 31, 41 (1st Cir. 2000), abrogated on other grounds, 533 U.S. 289 (2001), and that "we see no reason to doubt the correctness of the district court's decision to apply those principles to reject Rivera's petition." Rivera-Martinez v. Ashcroft, 389 F.3d at 210. Accordingly, the First Circuit affirmed the district court's dismissal of the habeas corpus petition on a procedural default analysis.

Respondent submits that Rivera-Martinez v. Ashcroft, supra, is controlling in the instant case. Respondent concedes on petition that "he was issued a final removal order in 2002." Memorandum ("Petitioner's Memorandum"), p.1.  However, because petitioner could have and should have but did not seek the statutorily prescribed direct review of his July 22, 2002, final order of removal at the circuit court (Eleventh Circuit), petitioner has procedurally defaulted on such review, and habeas corpus review of his claims is unavailable.

Accordingly, the Court should dismiss the action as procedurally defaulted under Rivera-Martinez, supra.

II.    BECAUSE HABEAS CORPUS REVIEW IS UNAVAILABLE, THERE IS NO
       LIKELIHOOD OF SUCCESS ON THE MERITS AND THE COURT SHOULD
       DENY THE STAY REQUEST.

       In the instant case habeas review of petitioner's claims
is unavailable because First Circuit has held that an alien who
"could have, but did not press [his claim] on statutory direct
review" at the Circuit Court of Appeals, has "procedurally
defaulted" on his claim so as to make habeas corpus review of
that same claim unavailable, Rivera-Martinez v. Ashcroft,
supra, at 210, the Court should deny the stay request.  Because
habeas corpus is unavailable as a result of petitioner's
procedural default, there is no likelihood of success on the
merits.  See Arevalo v. Ashcroft, 344 F.3d 1, 9 (1st Cir.
2003)("in sum, we hold that the applicable standard for
evaluating requests for stays pending review of final orders of
removal is the four-part algorithm used for preliminary
injunctions"); Lancor v. Lebanon Hous. Auth., 760 F.2d 361,
362 (1st Cir. 1985) ("[o]f these four factors, the
probability-of-success component in the past has been regarded
by us as critical in determining the propriety of  injunctive
relief"); Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir.
1993)(the "sine qua non" of the preliminary injunction test is
whether the movant is likely to succeed on the merits).

       Accordingly, the Court should deny the stay request.

## CONCLUSION

Because petitioner failed to avail himself of the prescribed direct judicial review of his removal order, habeas corpus review is unavailable to him, <u>Rivera-Martinez v. Ashcroft</u>, <u>supra</u>, and the Court should deny the stay request, dismiss the petition, and deny all other relief.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  <u>s/Frank Crowley</u>
FRANK CROWLEY
Special Assistant U.S. Attorney
Department of Homeland Security
P.O. Box 8728
J.F.K. Station
Boston, MA 02114
(617) 565-2415

## CERTIFICATE OF SERVICE

I hereby certify that I caused true copy of the above document to be served upon counsel for petitioner by mail on December 16, 2004.

<u>s/Frank Crowley</u>
FRANK CROWLEY
Special Assistant U.S. Attorney
Department of Homeland Security
P.O. Box 8728
J.F.K. Station
Boston, MA 02114

ATTACHMENT A

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
Miami, Florida

File No.:   A 75 342 932                    October 14, 1997


In the Matter of                )
                                )
MILRY MONDESTIN,                )          IN REMOVAL PROCEEDINGS
                                )
        Respondent              )


CHARGE:        Section 212(a)(6)(A)(i)(I) of the I&N Act - Alien
               in the United States who has neither been
               inspected, admitted nor paroled.


APPLICATION:   Asylum and withholding of deportation.


ON BEHALF OF Respondent:            ON BEHALF OF SERVICE:

Bianca Shukar Hardon, Esquire       Gregory Walt, Esquire
290 N.W. 165th Street, Suite M600   Assistant District Counsel
Miami, Florida  33169               Miami, Florida
New York, New York 10017


## ORAL DECISION OF THE IMMIGRATION JUDGE

        The respondent is a single, male, a native and citizen

of Haiti, who last arrived in the United States on or about

October 1, 1996.  At that time, he succeeded in making an entry

without being inspected, admitted nor paroled, by an immigration

officer.

        The respondent is in removal proceedings, pursuant to a

notice to appear, dated June 28, 1997, which was issued upon the

referral of his affirmative asylum application, filed with the

DMJ

Immigration and Naturalization Service.  The respondent, through
counsel, has admitted the allegations in the notice to appear and
conceded removability as charged.

The respondent has elected to go forward with his
application for asylum before the Immigration Court.  The
Immigration and Naturalization Service has introduced into
evidence, a country condition report from the United States
Department of State, dated March 31, 1996, which places the
respondent's asylum case within its proper country context.

The respondent testified that his home town was Gros-
Morne, but that he spent a certain amount of time in Port-au-
Prince going to school.  He stated that he lived in Gros-Morne
with his family until sometime about 1991 or so.  After the coup
d'etat, the military invaded the family home because the
respondent's father had been a Lavalas, an active Lavalas
supporter.  The respondent states that he and his sister were
beaten up at the time, although his father, apparently, succeeded
in escaping.

An older cousin who was in the home, at the time,
fought back with these invaders, was struck in the head and was
pulled outside, taken away and has never been seen again.  The
respondent's mother, at the time, was not home because she was
visiting her brother in the hospital.  Apparently, her brother
had also been so severely abused by the military that he had to
have been hospitalized.

DMJ

All this occurred approximately October 2, 1991. At this point, the respondent's father decided it was prudent for he and his sister to be sent to Port-au-Prince, to go to school, and there they lived with a sister, a cousin and an aunt. The respondent received a diploma in automotive mechanics, sometime in 1994, and eventually graduated from secondary school in 1995, in Port-au-Prince.

During the time he was in Port-au-Prince, he stated that he had a couple of problems. The first of these was sometime in May of 1993 when another student pulled a gun on him. He believes that that student was probably somehow affiliated with the FRAPH. The altercation, however, was not political, but was over the other student blocking a blackboard and that this whole incident was reported to the vice principal and was somehow diffused.

The respondent, however, feared that he might, somehow, be harmed in the future by this person and reported it to his brother-in-law, who happened to be an army lieutenant, and the bully was apparently disarmed. Nothing further came of this, but the respondent fears that he, thereafter, had made an enemy.

On March 3, 1994, the respondent, who was a member of a group called ZEL or student affairs, was listening to the radio with his friends. This group, ZEL, met twice a week at the school and used the radio station's posters and demonstrations to disseminate their pro-Aristide sentiments. Apparently, on the

A 75 342 932                    3                    October 14, 1997

DMJ

day they were listening to the radio, they were listening to the
wrong type of a station and the military approached in the jeep
and objected to the station that they were listening to.

The respondent and his friends were arrested and taken
down to the Criminal Research Bureau where they were beaten and
questioned.  The respondent was held for two days and was
released, with warnings, not to get involved in this type of
activity again.

At this point, he went back to his home town of Gros-
Morne, but then soon came back to Port-au-Prince and returned to
school.  After the intervention of the United Nations and the
restoration of Jean Bertrand Aristide, the respondent was able to
complete his studies without any further incident or problems.

The respondent graduated from high school in June of
1995, and returned back to Gros-Morne and moved back in with his
parents.  Nothing happened at this point, until the respondent's
father's cousin, who the respondent describes as an uncle, who
apparently is a liberation theology priest, came into town to
organize an office where complaints against former macoutes could
be lodged.  This man's name was Father Larius Merard and he came
to town in about August 3rd, 1995, and used the assistance of the
respondent's father in setting up this complaint bureau.

Apparently, as a result of this, two days later on
August 5, 1995, the family home was invaded by masked and armed
intruders dressed in civilian clothing and late at night.  They

A 75 342 932                    4                October 14, 1997

DMJ

put a gun to the respondent's head, asking about his father, and, again, the respondent and his sister were beaten up.  This time, however, his sister was also raped.

The respondent was pistol whipped and fell unconscious. When he came to, he found out that his brother had been beaten and shot at and injured in the process and had been rescued by and taken to the hospital by United Nations intervention forces.

His father spent 15 days in the hospital, during which time the respondent remained at home.  It appears, however, that both the respondent and his father and sister, remained in the same area and continued to live in that home for at least another year.

During this time, however, they felt insecure and were looking for ways to get out of the country.  Eventually, the respondent's father and his younger sister went to the Dominican Republic in about August of 1996, and the respondent, who had finished his studies, was unemployed and totally dependent on his father, had to leave also.  He went to Port-de-Paix, where he stayed with some friends for a couple of days, while he looked for a boat with which to come to the United States.

On cross-examination, the respondent stated that his uncle, Father Larius, has returned to Haiti and is now a priest in Gonaives, and that his father and sister had been deported from the Dominican Republic back to Haiti in about December of 1996.  He doesn't know exactly where they are now, but he has

A 75 342 932                    5                October 14, 1997

DMJ

heard that they may have returned to the Dominican Republic.

Furthermore, he stated that his brother-in-law, the lieutenant in the army and who is married to his older sister, was killed after the restoration of President Aristide and sometime in early 1995.  The perpetrators were unknown.

The respondent sums up, that now that his father is not there and his brother-in-law is dead, he has neither of them in Haiti to look after him.  If he's returned, he would have problems, not only because there is no security in Haiti, and he might be perceived as a young man who is somehow an enemy of the macoutes, if he is to return, but also that he would have no future, would have a hard time finding a job without having family ties or friends to look after him, and that he is an ambitious young man and wants to have the opportunity to remain in the United States where he might have a future and where he has an uncle, brother and family friends to look after him and support him.

The respondent bears the burden of proving that he's eligible for either withholding of deportation, under Section 243(h) or asylum under Section 208.  To be eligible for a grant of asylum, an alien must demonstrate that he is a "refugee" within the meaning of Section 101(a)(42)(A) of the Act.  That definition includes the requirement that an alien demonstrate persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social

A 75 342 932                    6               October 14, 1997

DMJ

group or political opinion.

To be eligible for withholding of deportation from any country, an alien must show a clear probability of persecution in such country on account of one or more of the five reasons specified.

In determining whether a claim of persecution is on account of political opinion, it is necessary to examine the motivation of the group threatening harm. <u>INS v. Elias-Zacarias</u>, 112 Sup. Ct. 812 (1992) and <u>Matter of Maldonado-Cruz</u>, 19 I&N Decs. 509 (BIA 1988), <u>reviewed</u>, <u>sub</u> <u>nom</u>, <u>Maldonado-Cruz v. INS</u>, 883 F.2d 788 (9th Cir. 1989). Persecution occurs when the persecutor inflicts oppression on an individual because of a difference between the views or status of the persecutor and that of the victim, which the persecutor will not tolerate.

The respondent has related numerous instances in which it appears, that rather than being persecuted, he simply happened to be in the wrong place at the wrong time and that the perpetrators, who may have had a political agenda against the respondent's father, discovered the respondent in the vicinity and, as a result, the respondent himself was harmed.

There is, however, no showing that on these occasions, one in 1991 and one in 1995, that the harm constituted persecution because there is absolutely no showing that it was designed to inflict oppression on this particular respondent because either of the status that he held or a view that he had.

DMJ

Certainly, in Haiti, if one happens to be in the vicinity where there is a home invasion and where they are actually looking for somebody for political purposes, the other people in the house, who may or may not be family members, can also be harmed in the process.

This is certainly what happened to this respondent, but the Court is unwilling to characterize this as persecutory in the absence of a showing that this respondent, himself, was targeted for punishment on account of either his political opinion or of his membership in a particular social group or for one of the other reasons enumerated in Section 101(a)(42)(A) of the Act.

The respondent has also related an incident that happened in March of 1994, where he was arrested, listening to a radio with friends. While this could possibly be deemed to be persecutory, it appears to be more in the nature of harassment by the military against young men who are gathering in groups, in an effort by the military to somehow diffuse or eliminate any potential threat to their continuing hold on power, as at the time, they were the ones in power.

Lastly, there's absolutely no showing on the basis of this record that anybody in Haiti today wishes to harm this respondent for any reason whatsoever. Even in his conclusion, he does not state that there is anybody in Haiti that he can point to that might have any reason to specifically harm him for one or more of the reasons that might be enumerated in the Act,

A 75 342 932                    8                    October 14, 1997

DMJ

uncoverable by either our asylum or withholding of deportation statutes.

He's indicated, generally, that there's no security in Haiti and that, possibly, he might be perceived as being a young man coming back from the United States and, therefore, might be competing with former macoutes for the scarce resources and scarce jobs in that country.  He's also indicated that he would have a hard time competing since he has no family ties left in Haiti who could assist him in finding a job or in making his way in life or taking advantage of what limited opportunities might be available to him in that country.

While the Court appreciates the respondent's general disagreement with social, political and economic conditions in his home country, his disagreements with these general conditions that affect the population, as a whole, simply do not constitute the reasonable possibility of being persecuted.  The respondent has failed to show that there is any alleged persecutor who might have the inclination to punish him for one or more of the reasons enumerated in the Act.

Since it is the Court's conclusion that this respondent has failed to show a reasonable possibility of being persecuted upon return to Haiti, it follows that he has failed to meet the higher burden of proof required for a grant of withholding of deportation.  Therefore, the following orders must be issued.

<u>ORDER</u>

A 75 342 932                            9                   October 14, 1997

DMJ

IT IS ORDERED that the respondent's request for asylum, under Section 208, and for withholding of deportation, shall be and the same are hereby denied.

IT IS FURTHER ORDERED that the respondent shall be removed from the United States to Haiti on the charge contained in the notice to appear.

 

 

Keith C. Williams
Immigration Judge

A 75 342 932                            10                            October 14, 1997

<u>CERTIFICATE PAGE</u>

I hereby certify that the attached proceeding before

JUDGE KEITH C. WILLIAMS in the matter of:

MILRY  MONDESTIN

A 75 342 932

Miami, FL

was held as herein appears, and that this is the original

transcript thereof for the file of the Executive Office for

Immigration Review.

_____
DETTA M. JEFFERIES, Transcriber

Deposition Services, Inc.
6245 Executive Boulevard
Rockville, Maryland 20852
(301) 881-3344


_____<u>January 8, 1998</u>_____
(Completion Date)

**ATTACHMENT B**

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

MONDESTIN, MILRY
950 NE 157TH TERRACE
MIAMI, FL 33162-0000

Office of the District Counsel/MI
155 So. Miami Ave., Rm. 500
Miami, FL 33130

Name: MONDESTIN, MILRY

A75-342-932

Date of this notice: 07/22/2002

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Lori Scialabba*

Lori Scialabba
Acting Chairman

Enclosure

Panel Members:
    HOLMES, DAVID B.

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

======================================================================
======================================================================

File:    A75-342-932 - Miami

Date:  JUL 22 2002

In re:  MONDESTIN, MILRY

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:  Pro se

ON BEHALF OF SERVICE:  Jill Tavlin Swartz, Assistant District Counsel

ORDER:

      PER CURIAM.  The Board affirms, without opinion, the results of the decision below.  The decision below is, therefore, the final agency determination.  *See* 8 C.F.R. § 3.1(a)(7).

_____
FOR THE BOARD